UNITED STATES *v.* ROSENTHAL BERCOW CO., INC., H. A. GOGARTY, INC. (No. 4957)[1]

---

[1] C. A. D. 713.

United States Court of Customs and Patent Appeals, July 7, 1959

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Murray Sklaroff*, trial attorney, of counsel), for the United States.

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel), for appellees.

*Steptoe & Johnson, Eugene L. Stewart, Charles G. Williamson, Jr.*, and *Karl E. Bakke*, amicus curiae.

Before WORLEY, Acting Chief Judge, and RICH and MARTIN, Associate Judges

RICH, Judge, delivered the opinion of the court:

This appeal by the United States is from a judgment of the United States Customs Court, First Division (C.D. 1960), sustaining the protests of appellees that the imported merchandise, invoiced as "High Test Bleaching Powder 70% granular," should be classified under paragraph 14 of the Tariff Act of 1930 as "Bleaching powder or chlorinated lime" rather than under paragraph 5, as modified by the Torquay Protocol to G.A.T.T., T.D. 52739, as a chemical compound, n.s.p.f., as classified by the collector. Two protests were consolidated for trial.

The pertinent paragraphs are:

Classified by Collector under:
Paragraph 5, Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739:
All chemical elements, all chemical salts and compounds, * * * all the foregoing obtained naturally or artificially and not specially provided for * * * _____ 12½% ad val.
Claimed, and held below to be classifiable under:
Paragraph 14, Tariff Act of 1930:
Bleaching powder or chlorinated lime, three-tenths of 1 cent per pound.

The imported merchandise consists of the chemical compound calcium hypochlorite, $Ca(OCl)_2$, in the form of a grayish-white granulated solid, used for water purification, sanitizing, as a disinfectant, a germicide and as a bleaching agent. In each instance the effectiveness of the product is due to available chlorine when the product is properly put into solution.

The basic question in this case is what is meant, in the Tariff Act of 1930, by the term "bleaching powder" in the paragraph 14 provision for "Bleaching powder or chlorinated lime." Does it refer to a class of products or to a single product and is it inclusive or exclusive of the chemical compound of commerce, here imported, known as calcium hypochlorite?

We can eliminate a lot of useless discussion by facing, at the outset, the undisputed fact that the import is a powder and that it is used

for bleaching, in which sense it is *a* bleaching powder. One aspect of our problem, therefore, is whether paragraph 14 includes all such products. On the other hand, if paragraph 14 is directed to a single specific material, we have to determine whether calcium hypochlorite is that material.

The government, appellant, produced five witnesses. Their testimony was to the effect that calcium hypochlorite is used as a bleaching agent, but is not properly designated bleaching powder, since the latter term is limited to a product containing 35 to 37 per cent available chlorine or slightly higher (the amount contained in chlorinated lime), and never as high as 70 per cent available chlorine, the amount contained in the imported merchandise. Testimony on behalf of appellant also tended to show that this 35 to 37 per cent available chlorine product is known synonymously as bleaching powder, as chloride of lime and as chlorinated lime, but not as calcium hypochlorite, that the process of manufacturing calcium hypochlorite is different from that used to produce chlorinated lime, and that calcium hypochlorite is not merely a superior form of "bleaching powder," but an entirely different chemical which can be used with better control than "bleaching powder." On cross-examination one of appellant's witnesses agreed that there are "bleaching powders" which have more than 40 per cent available chlorine.

The president of the importer-appellee, Rosenthal Bercow Co., Inc., testified to the effect that the imported merchandise is sold as bleaching powder and as calcium hypochlorite for use as a bleach and that it could be called chlorinated lime, although he has not called it that.

Appellee produced one additional witness, the vice-president of Rosenthal Bercow Co., Inc., who stated that the imported merchandise has been sold and offered both as bleaching powder and calcium hypochlorite and that it could also possibly be known as a form of chlorinated lime "but we are not pushing that particular point."

Appellee cites portions of several works of reference in an attempt to show that the terms bleaching powder, chlorinated lime, chloride of lime and calcium hypochlorite are used "more or less" interchangeably. Among these is The Summary of Tariff Information, 1929, which refers to paragraph 14, Act of 1922, which used the same expression as the 1930 Act, in the following manner (volume 1, page 93):

### BLEACHING POWDER

#### (Calcium Hypochlorite)

*Description and uses.*—Bleaching powder, commonly known as bleach, chloride of lime, or chlorinated lime, is a white powder with a characteristic odor resembling that of chlorine. The fact that it can oxidize gives rise to its uses. A good grade contains about 75 per cent of soluble chlorinated lime and from

18 to 20 percent of excess hydrated lime which stabilizes the bleach and maintains its keeping quality. Commercial standards require that bleaching powder have a chlorine content of 35 per cent, which is the measure of its effectiveness as a bleaching agent.

The largest use of bleaching powder is as a bleach for wood pulp paper stock and for vegetable fibers. Smaller quantities are used in power laundries both as a bleach and as a disinfectant. For hospital and household use, it is an effective disinfectant and a deodorizer. * * *

*Production.*—Bleaching powder is made by absorbing chlorine gas in slaked lime with the proper technical control of time and temperature. * * *

According to the evidence in this case, the product described in the body of the above text is not in fact calcium hypochlorite notwithstanding the parenthetical subheading. Both the available chlorine content and the method of production described for "bleaching powder" are at variance with the chlorine content and method of production of the imported merchandise, although testimony indicated that "bleaching powder," meaning chlorinated lime, may contain a portion of calcium hypochlorite in chemical combination or admixture. The additional reference works cited by appellee tend to show that calcum hypochlorite corresponds in some respects to various definitions of bleaching powder, but they do not convince us that the testimony of appellant's witnesses is inaccurate.

The legislative history of paragraph 14, as outlined by amicus curiae, indicates that since the Tariff Act of 1842 Congress has been referring exclusively to the particular compound chlorinated lime and has used the term "bleaching powder" to mean one and the same thing. This conclusion is not seriously disputed by appellees as to the meaning of paragraph 14 before 1929. They argue that since the product here involved did not become an article of commerce until 1928 or 1929, just before the Tariff Act of 1930, this discussion of early history is beside the point. Appellee contends that calcium hypochlorite is *a* bleaching powder since it is admitted to be a bleaching agent in powder form and that Congress intended to make it dutiable under paragraph 14 of the Tariff Act of 1930, relying heavily on the specific reference to "Calcium Hypochlorite" found in the Summary of Tariff Information, 1929, supra.

We cannot agree. As pointed out above, the Summary, notwithstanding its subheading, does not describe calcium hypochlorite but only chlorinated lime. The "(Calcium hypochlorite)" subheading, of unknown authorship, appears to us to be a chemically inaccurate interpolation. There appears little reason to believe that Congress, in the Tariff Act of 1930, suddenly changed the long established meaning ascribed to paragraph 14 and its predecessors, and this conclusion is in agreement with the testimony of qualified dealers in products of this description. On the evidence as a whole we feel that though calcium hypochlorite may be considered by some

to be *a* bleaching powder, it is not, for tariff purposes, "bleaching powder or chlorinated lime" as that term is used in paragraph 14.

The whole record in this case shows that the "Bleaching powder or chlorinated lime" referred to in tariff acts in those terms for over a hundred years, is a single product produced by flowing chlorine gas over slaked lime in a chamber, thus chlorinating the lime and producing the commercial article sold as "bleaching powder." It seems fair to say that the name goes back into "antiquity" and was one of those non-technical names for a product which was well known, though its precise chemical composition was not. Under such circumstances it is not surprising to find a wide variety of definitions and explanations of what the composition is, some clearly in conflict with others. One thing appears to be clear. There is some calcium hypochlorite in "bleaching powder" but that does not mean that the new product which came on the domestic market about 1928 or 1929, a relatively pure calcium hypochlorite, much more stable and soluble than "bleaching powder" and having twice the available chlorine content, is "bleaching powder" within the century old established meaning of that term.

The situation has given rise to so many and such diverse definitions of "bleaching powder" and calcium hypochlorite, including cross-references in dictionaries from one to the other, that it is no trick at all for counsel to select those which serve their ends. When we have read them all, however, it is clear that "bleaching powder," i.e. chloride of lime or chlorinated lime, is a well known product which is not the "calcium hypochlorite" of commerce. We are convinced Congress did not intend the latter to be subsumed under the old term "bleaching powder" used in tariff acts since 1842. First, we read "or" to mean that "bleaching power" *is* chlorinated lime and nothing else. This is clear from the record. Second, Congress did not say bleaching powders, which it could easily have done, knowing there was more than one powder used for bleaching, had it wished to include all. Third, the 1929 Summary subheading reading "(Calcium hypochlorite)" is an erroneous description of the chemical complex described in the text which follows, namely the old fashioned "bleaching powder." It is a strange thing indeed that only the new material, calcium hypochlorite, which had just then come on the market, should be referred to in the subheading to a paragraph describing only the old material, chlorinated lime, its uses, consumption and method of production. We are not going to attribute to Congress an intent based solely on such an obvious mistake in technical writing as the subheading represents. Numerous technical works and dictionaries cited to us in the briefs show that calcium hypochlorite is always to be distinguished from bleaching powder (chloride of lime) as a different substance. Appellee has referred to the

subheading as a "listing" of calcium hypochlorite under the heading "Bleaching Powder." It is not a listing. It is an erroneous interpolation of the wrong chemical name for what is there described. The writer apparently succumbed to the danger of too little knowledge of his subject.

The judgment of the Customs Court is *reversed*.

WORLEY, C. J., did not participate in this decision because of illness.

SMITH, J., not present at the argument, was called in to participate in the decision pursuant to stipulation of counsel.